Mr. Stanley. Thank you so much and may it please the court Martin Stanley and Edward Barrett who are also the trial counsel for the appellant in this case. This case was very difficult to try. I'm sorry to say that Mr. Barrett and I have tried a lot of cases I'm not sorry to say that but this was an extremely difficult court to try this case in. For example, when I would address the court and say respectfully I was lectured for five minutes that's in the record. A lot of the things are not in the record but one thing for certain is that there is a continual pattern of negativity and from this judge toward our side. When I asked how many minutes do I have left in my rebuttal argument he made a I know it doesn't show in the record but I feel obligated to tell this court he made a extremely nasty face and put his hands up and put six minutes did not respond. Then afterward he said from now on you should have your own staff sitting next to you make the keep time. Do you think this is your best argument? No. Don't start with it. But I think when you go back to the evidence itself. I prefer that you I almost never find an attack on the trial judge to be a persuasive argument on appeal. Perhaps my colleagues have a different view and I think you have better arguments to make and limited time to make them so I think you ought to move to the other ones. I agree and the only reason why I'm making that is because to have to go back to that court would be an extremely difficult time. You'll only have to go back if we reverse. No I understand. Tell us why we should reverse. Well okay first I think the court should consider whether we should be going back to that court. You really want to make this argument make it but I'm telling you I don't find it persuasive. I understand. Well first of all let's talk about the past arrest. Under California law that past arrest should never have been admitted. There was no charge, no conviction, no nothing. Nothing happened and under California law it's clear there's a Supreme Court case that has nothing to do with probable cause. Yet this judge allowed that evidence in. This case was originally filed in California State Court, not in federal court. The defendants removed the defendants underneath the Pele removed this case to federal court. Now this is the third time we've been here and the past arrest just had nothing, no business being in this case but what it did do is prejudice this jury. It was definitely not harmless. It was extremely dangerous. It was about an arrest relating to six months earlier or several months earlier that an African-American was supposedly held at gunpoint by our client. Okay that was allowed to be heard by this jury. Now that's one. Then we get into the gang affiliation issue. Now I think what's really unusual about this case, I've never seen this before, is that this judge not only did not limited the evidence to Mr. Mia's gang affiliation but he also allowed in how this gang had a shot-caller, how who the leaders of the gang were, how they were affiliated with anti-African-American racist crimes that they did over and over again and this none of that evidence had anything to do with our client. Well but the the offense for which your client was arrested, there was a lot of evidence that that crime was racially motivated, right? And so isn't evidence of the gang's racist views, like I mean probable cause is a very low standard and Rule 401 relevance is also a very low standard and so if the question is, you know, is this evidence that makes it more likely that the officer could have had probable cause, it seems like there is a connection there. Well for example, let's say he was a gang member and there were 5,000 gang members and the other four and a hundred of those gang members were shooting people all over town. Does that mean that is evidence of for probable cause? I would say that's way too attenuated and I think that the evidence in this case was way too attenuated and you have to remember you're dealing with a jury and a jury doesn't understand all the intricacies of probable cause. They're understanding the intricacies of common sense and they hear all this stuff and that's extremely tainting. They don't see oh that has nothing to do with Mr. Mia, they see this is really bad, this guy's a member of this horrible gang and they can we of course there's probable cause simply because he's a member of the gang. Is your argument a 401 argument or a 403 argument? It's both. Well, I understand the 403 argument. I'm not sure I understand the 401 argument. If the police have reason to believe that a member of a gang who meets a certain description has committed a crime, the fact that somebody is a member of that gang and meets a description isn't enough to establish probable cause but there are certain facts, there are certainly facts that the police might take into account with others to establish probable cause, aren't they? Yes. Aren't they, don't they make the fact more probative under 401? Potentially, but that's why the jury needs to be clearly instructed which is the second argument that we make in the case. That's why I wanted you to turn to the instruction. What was wrong with the instruction? So the instruction was supposed to be a limiting instruction. So if you read the instruction carefully, tell me, I'd love to know, sorry. And I don't answer questions. Well, in the opinion sometimes do. But what is limiting about that instruction? It basically says, well, you can use gang affiliation in and of itself to, as a, as to, for probable cause. It doesn't say you can't, that alone is not, that alone is not enough. It does not say anything. That's what I was asking for. Can you please tell the jury that gang affiliation alone is not enough? I asked for that, the judge said no. So he didn't give any instruction whatsoever that was limiting. In fact, this was really expansive. Well, he said you couldn't use the gang evidence to prove the plaintiff is a person of bad character or had a disposition to commit crimes. Did, was there a request that it be expanded to say it couldn't by itself cover probable cause? Yes. Tell me where that is in the record. Yes, I hope. I definitely did ask that. But let me see if I can find that. And I apologize. Well, I can look later. So I don't want you, you'll get up on rebuttal. You can tell us on rebuttal. I'll try to find it. So I did definitely ask for that. And I thought that's the law. I asked for it because it's the law. Because you cannot find probable cause based just on the fact that you're a member of a gang. And he said no, that's argument. How can that be possibly argument? And we addressed that in our I'm sure reply brief. How can that possibly be argument? Argument means you can argue either way. That's not argument. That's the law, plain, simple, clear, undoubtedly, no possibility of any other claim. No one can argue he's a member of a gang, so that's enough for probable cause. And as a matter of fact, going back to the evidence of the past arrests coming in, it just adds to that. So I think overall, there is no possible way that the court was correct in providing that instruction to the jury the way it was provided. It was not limiting at all. Not using it for character has nothing to do with not using it for probable cause. And in fact, the instruction itself further states it can be used for probable cause, if I'm not mistaken. I pretty much recall this record pretty well. Now, next thing I want to talk about is Mr. Mia's innocence, if that's okay, the issue of whether that should have come into the proceeding. And I think undoubtedly that his innocence, the fact that he was found factually innocent, was something important, especially since the jury instruction required you to prove innocence. Now, the defense is saying, or the appellees are saying. Well, it required you to prove favorable termination, which is not quite the same thing, right? Correct. Favorable termination. The defense, or the appellees are saying, well, the statement of the case indicated that he was found innocent because it was reversed. The statement of the case is not evidence. Never has been, never will be, and in fact, the court used the statement. Why is it relevant to the issue of probable cause? Factually innocent people, legally innocent people, can be arrested with probable cause. This is a case about malicious prosecution, and so why is it relevant? And I guess in your terms, I'd ask two questions. And why isn't it under 403 exactly the kind of evidence that is likely to prejudice the jury the other way in which the judge should keep out? And I understand that point, except the jury instruction required you to prove favorable termination. That was one of the elements. But favorable termination was not contested. Favorable termination was not contested in this case. The charges were dismissed. Charges can be dismissed for all sorts of reasons other than actual innocence. Actual innocence is a very different concept. But the jury was not told that there was a favorable termination, ever. There's no evidence of that in the record. You don't raise on appeal an argument that the jury wasn't properly instructed about favorable termination. That's correct. What we do, to the extent that we're saying that... But you wanted the jury to be told he didn't commit the crime. And I don't know why that is relevant to the issue of probable cause. It's relevant to the issue of favorable termination, which was a required element under the jury instructions that were given by the court, the Ninth Circuit model jury instructions, to this jury. The jury was instructed on favorable termination? Correct. And they found favorable. And so they were instructed on favorable termination? They were instructed... Well, if you're entitled to present evidence that the charges were terminated favorably to your client, that's not the issue. The issue is whether you were entitled to present evidence that your client was actually innocent. And that's what the judge kept out. And I'm not sure why you should have let it in. Well, because, respectfully, the favorable termination was that he was found factually innocent. Favorable termination was that the charges were dismissed. Well, there was no evidence of that in this case. Well, but you could have put in evidence of that. The judge didn't prevent you from putting in evidence of favorable termination. He only prevented you from putting in evidence of actual innocence. Those are two different concepts. I understand they're different concepts, but I think one is relevant to the other. A favorable termination can be a finding of an actual innocence. And that's the wrong to put that in. That is a factual favorable termination. We don't have to put in only this kind of evidence, only that kind of evidence. But see, now we're back to my question, and I don't want to spend too much time on  I apologize. But the judge, I think, could have reasonably said, I'll let you put in evidence of favorable termination if you want to. We've chosen not to. I'm not worried about that. But he... He's not going to let you put in evidence of actual innocence because that presents a 403 issue for me. Yeah. That is liable to lead the jury to be... to have sympathy that it might not... that in determining probable cause, it's not supposed to have. So I'm trying to figure out why that's an abuse of discretion under 403. Well, because we weren't allowed to put in anything. He did not offer, you can put in something else. He just said, you're not doing this, period. I'm not saying that Your Honor's wrong about the 403 issue. I am saying that I don't think that this was the proper way that it was handled in the court below. Okay? So now we come to the issue about whether or not this other person was the actual shooter. So that's similar to this kind of evidence of our client being factually innocent. Well, in Smitty, the court... this court in particular stated that it was entirely appropriate to put in evidence that this other person was the actual shooter. And we cited that in our reply brief. We cited the exact quote out of the court, that that was the best way to prove the favorable termination. So I tried to prove it in that way as well, and the judge didn't allow it. But you were allowed to some degree to cross-examine about the evidence that Munoz was the shooter, weren't you? Not about the other shooter. Not in detail, and it was very, very much limited. There was a motion in limine, which precluded that. And so, and to be honest with you, we were on our toes in this case, concerned. We did not want to take any chances whatsoever because the judge made it clear not to. And instead, in Smitty, the court stated, perhaps most persuasively, the plaintiff argued that Varney and Knuckles failed to investigate other suspects adequately, including two former boyfriends named John. And then it talks about the plaintiff also argued that the investigation of John Scrogan was deficient. We didn't get to allege those things. Mr. Munoz was on a list of 12 other people that were potentially from Officer Maldonado given to the officers in this case that actually did the  They didn't investigate those other 12 people that were on the list, including Mr. Munoz. They basically focused on our client, and that was it. And so we wanted to show that it was Mr. Munoz who actually was the actual shooter, according to all the evidence in the other proceeding, in the habeas corpus proceeding. The judge basically found it was more likely than not him. And the judge, in this case, did not allow us to do that at all. Why would that have been relevant? I get the, you know, you had a list of 12 suspects and you didn't look at the other 11. That seems relevant. But why is subsequently developed evidence in a different proceeding in the case? I'm sure you should have known about that. Why would any of that be relevant to probable cause? Sorry. We were here twice before, and one of the issues was whether the investigation was adequate. That was what the court said in the previous decision, I believe. And that was one of the issues to be tried. And therefore, not only is the investigation an issue, but also with regards to whether or not there was, you know, circumstantial evidence that they should have brought up about probable cause, that maybe it was this person and not that person. They should have identified that to the judge who issued the warrant. There's a whole host of reasons why that's relevant. And even Smitty said that was most persuasively the argument that was supposed to be made at the trial in Smitty. So I would suggest that undoubtedly it was relevant that Smitty court found it to be relevant. To say that it's not relevant on the issue of probable cause when that's the identical issue that was handled in Smitty would be, I respectfully, I would have to disagree with that. Now, I want to talk about the issue about the wrongful conduct on this supposed interview with Mr. Jenkins that we had in the prison. Because I think that's an extremely important issue. Because credibility at trial is the only thing that counsel has. If you lose your credibility at trial, you've lost your case in trial. And there's no doubt, Mr. Barrett's been practicing a lot longer than me, but I've been practicing a long time too. And to say that if you interview a witness, you're in between the rock and the hard place. You go and interview the witness and that's when the witness is, you know, a few weeks later he's deposed and changes his story from 20 years ago. It's your somehow fault and you bring that before the jury. By the way, the defense have no cases on this showing that it's correct. There's cases all over that we cited showing that it's incorrect to do that, to insinuate wrongdoing on a part of plaintiff's counsel because they interviewed a witness. Well, so you either commit malpractice and you don't. Is your argument about what the other side said about this or the introduction of the evidence? What the other side said. There was no evidence of us committing. Well, no, there was evidence introduced that before the recantation, counsel met with the witness, correct? We did meet with the witness. Right. That evidence was put in front of the jury. Correct.  So evidence was admitted of a meeting but no evidence was admitted of the substance of the meeting, correct? Correct. Okay. So is your objection to the introduction of that evidence or to an argument that the other side made based on that evidence? It's to both. Okay. Because you cannot. I want to take them both separately. With respect to introduction of the evidence, you wanted to bring out at trial that this witness had recanted his previous statement, correct? Well, that's correct.  And so the other side wanted to show that right before the recantation, there was a meeting with counsel for the plaintiff. That's what they wanted to show. Okay. Why isn't that relevant? Because that is an inference that counsel did something wrong. That's not an inference. That's just evidence. That's just evidence that immediately before the recantation, something happened. Now, they may have made an improper argument based on that. I don't know. That's why I want you to address the argument issue separately. But why aren't the events that occur directly before a recantation evidence with respect to the validity of a recantation? Because you can't say when he recanted. Just because he recanted in the deposition doesn't mean he recanted when he was in the meeting with us when we talked to him for five or ten minutes. Were you prevented from putting on evidence about what occurred during that meeting? We put a declaration. Was I going to testify? In front of the jury. Was I going to testify in the case? Well, I don't know. I don't think by that time it would have made a difference. Didn't the witness testify that essentially no one had ever asked him before? Correct.  That's correct. And yet the defense took that still, even though that was the evidence, the defense took that still and argued that there was impropriety. What was his argument? Tell me the argument he made that you think requires reversal. We – it's very detailed in the – hold on – in the briefs. We quoted it. During closing argument, on page 28 of our reply brief, we quoted at the bottom, and these claims are now based on the assertion that Mr. Jenkins was coerced. Now, Mr. Jenkins, you'll remember, he changed his testimony only after he and Mr. Mia were both at the Calipatria Street Prison. Well, there was no evidence of that. He might have changed it years before. No one saw him for 20 years. And then only after Mr. Mia's attorneys, these two gentlemen pointing at us, went and had a private meeting with him. Only then did he change his testimony. Okay? And then, plaintiff then said Jenkins voluntarily came forward to clear Mia. Will you be the judge of that? He only came forward after this private meeting between the two attorneys. Only after plaintiff and Jenkins were in Calipatria Prison raises some questions. I looked at that. That's why I was – I was concerned that you said that you had been accused of suborning perjury as opposed to them just setting forth the timeline and letting the jury reach its own conclusions. You do agree that counsel did not accuse anybody of suborning perjury? Well, if you say, for example, you have this – You agree that counsel did not accuse anybody of suborning perjury? I don't agree with that. So you think that's an accusation of suborning perjury? I believe that's circumstantial evidence. That's how you prove it. You say they went into this meeting and he changed his testimony. That's how you prove suborning perjury. So something must have happened. He's not saying nothing happened during this meeting. He's not saying counsel was allowed to interview him. He's saying they went into this meeting and all of a sudden the guy changed his testimony. I mean, that's pretty direct if you ask me. I apologize. Maybe I'm wrong in not seeing things correctly, but I would say that if you're a criminal prosecutor and you say those things, a jury can easily convict two attorneys of suborning perjury if the attorneys are on trial for that based on that testimony. How else are you going to prove it? I think if you had this as evidence of suborning perjury, you'd get a directed verdict in favor of the defendants. There's no evidence. That could be true. There's no evidence about what was said. I hope so. But at the same time, you have to remember that you're dealing with jurors who don't understand that. They always think – I understand your argument. They're suspicious of everybody. Is that fair? Let's clear up the suspicion and have a trial based on the merits. All right. Thank you. So we've taken you past your time, but we will give you two minutes to rebuttal. Okay. Sorry. Thank you. Mr. Gilbert. Thank you. May it please the Court. Kevin Gilbert for defendants and appellees. This case involves the wrongful death, the shooting of an individual. At issue in the case involves admissibility of key evidence, specifically about gang evidence, about prior arrest, and about testimony and evidence related to the detective's investigations. In order to put this in the proper perspective, we need to start with a factual discussion of the actual shooting. The shooting occurred when an individual who was part of a gang, standing at the gang house where the shot caller for the 204 Street gang had been congregating. One of the individuals left that gang gathering, walked across the street, and shot an individual. That was the facts that was given to these detectives. The detectives understood and were provided from the start of the case that this was originated from a gang residence where a gang hangout, where the gang congregates, in a neighborhood where there had been a number of gang-related murders. Specifically, African-American and Latinos fighting where Latinos had been killing African-Americans. That information was known throughout the entirety of the investigation. That was started on day one and it continued through the entirety of it. More importantly, that was the information upon which the detectives based their decision that probable cause existed and which the court, which signed the Raimi Warrant, ultimately looked at. Specifically on that point, it's important to note that plaintiffs, excuse me, the Raimi Warrant actually contained a detailed discussion of the 204 Street gang. The interaction of the gang, the history of the shootings, and what led to the discussion and the identification of Plaintiff Mia as the actual shooter in this case, or at least the accused shooter in this case. Can I ask you an unrelated question? We have somebody here who we now know has been adjudicated wrongfully convicted. Does he have any remedies against, other than this lawsuit, against the state or the county? So, Your Honor, the answer is somewhat. There are statutory remedies. For example, under the Factual Innocence Statute, plaintiff was allowed to, and in fact did apply for and receive monetary payments in the amount of several hundreds of thousands of dollars. But there are immunities that are called into place. And if he can prove that the conviction was secured by false evidence or undue influence, then he absolutely would have a remedy. Right, and I'm talking about aside from this lawsuit. This lawsuit says I was arrested without probable cause and therefore I'm entitled to civil damages. However this lawsuit turns out, it does seem to me the state of California did wrong by this person and that he deserves some recompense. And I'm trying to figure out whether he has other evidence of getting it. And he's received recompense. There has been a monetary payment from the state to plaintiff. But that is a separate legal issue that is... I understand. I was curious. It's not relevant to this position, this case. Thank you, Your Honor. So, if I may, the evidence then is focused on the investigation, on the Ramey warrant, what's presented. That included not only discussion of the gang evidence, but also the discussion of the prior arrest. Now we've heard a lot about the prior arrest and the evidence of the prior arrest cannot form the basis of probable cause. But it wasn't the prior arrest that was significant. It was the facts underlying that arrest. What do you do with the limiting instruction on that point? I agree. I think I agree with you that this is relevant to the mix of facts that go into determining probable cause. And I'm inclined to think that the trial judge didn't abuse his discretion in letting it in. But the instruction doesn't tell the jury that it's not enough, that the prior arrest and gang evidence themselves are not enough to establish probable cause. And I went back and found the portion of the record where counsel asked for an instruction of that effect, and the judge said no. Why shouldn't the limiting instruction have told the jury, you may use this as a fact, but in and of itself it's not enough? There's at least two, if not three, issues that go to that. First is, what was requested in the limiting instruction was a very specific phrase, this is not enough, a legal argument. Not a legal principle, not a neutral case site, just this is not enough. But isn't that inaccurate, legal? No, Your Honor, it's not. Do you think that both the gang membership and arrest would be enough in and of themselves to establish probable cause? That would fly afoul of Wesby. By itself, it depends on the totality of the circumstances we're looking at. In this case? That becomes a factual question.  So that was the only evidence of probable cause. They arrested him because he was a gang member and had a previous arrest. Wouldn't we find, as a matter of law, that there wasn't probable cause? Your Honor, you would have to look at Wesby, and Wesby specifically says that the divide and conquer technique where you take each individual element and say this isn't enough, this isn't enough, is improper. And Wesby actually chastised courts from going through that kind of analysis. What our court did here, our trial court, was instead to say we're going to address this in multiple instructions. We have an instruction on probable cause where the court actually set forth the specific elements of the two crimes, went through and said here is the elements. Then there was two additional instructions, I believe they were 18 and 19, where they then go one step further and say here's the elements of the crimes for malicious prosecution and false arrest that are being prosecuted. So the jury then had another instruction on this is the definition of probable cause. And then there was a fourth instruction, which was the limiting instruction, which then said you cannot use this for anything except probable cause. And then there was a very clear legal definition instruction on this is what probable cause is and specifically what it is, what are the elements in these crimes. Those other instructions plaintiff's counsel acquiesced to. And in fact, at no time did plaintiff's counsel ever request a separate instruction. So there was never a separate instruction that talks about the totality of the evidence and how whether probable cause by itself on this one issue would or would not be. So that was waived. And furthermore, instructional questions about modifications of instructions are viewed under abuse of discretion rather than de novo. So the abuse of discretion standard is what we would be looking at here. But going back to the actual facts here, the gang and the prior arrest and the gang evidence was all in the Ramey Warrant. Plaintiff is the one who actually introduced all of that. In fact, supplemental excerpt to the record 143 is the Ramey Warrant that actually goes through and articulates out the discussion of the probable cause. Ironically, it was plaintiff that requested and sought its introduction at trial. That's at 9 ER 1695. So plaintiff is the one that decided to actually introduce that record to the jury, publicize it, and go forth and explain it. But that is exactly the evidence that the officers relied upon in their investigation for improbable cause. Turning back to the arrest, the arrest was relevant for multiple reasons. Plaintiff Mia, in this case, had claimed, I live in Carson. I don't frequent this area. I have no gang involvement. I was never in the area. I had nothing to do with it. So the facts leading to the prior arrest of video, which depicted Mia, admittedly grainy, was unclear, was not conclusive evidence. Testimony that identified him, but inconclusive. And a similar fact pattern, a Latino individual with gang relations or gang ties and gang activities attacking and threatening an African American just a block or two away from where this specific murder occurred. And in a neighborhood where plaintiff Mia said he did not go. Showed the officers that there were facts to suggest that Mia actually did associate in this neighborhood. That he was frequented there. That he did participate in gang activities. That coupled with Officer Maldonado's identification of a number of gang members. All of which were investigated. All of which were included in photos to the witnesses. And all of the witnesses, well let me be clear, Jenkins specifically identified Mia. He specifically identified him to the detectives during the preliminary hearing and again during the criminal trial. I take the point on the other side to be that all of that the evidence of the underlying facts behind the prior arrest, that he was in the area and seen there and so forth, is relevant. But the fact of the arrest itself doesn't add very much to that evidence and is prejudicial. And so why under 403 shouldn't the fact of the arrest have been excluded? Can I grab my water bottle before I answer that? So the answer, Your Honor, is that the arrest showed the basis of probable cause. It showed that the officers had looked at the totality of the evidence and believed that there was a sufficient basis to arrest and prosecute. And it also showed this is why we have him in the system. This is the evidence that shows us that he's linked to the gang. Here's the documentation of him. This is the first prong of the link to being a gang member to the 204th gang. So Maldonado has this information. He's the gang detective that specializes on the 204th Street gang. So it's the tie of the information together not simply saying, hey, we've seen him. He's accused. It's we've seen him. He's accused. We've arrested him. We documented him. We tracked the 403. Here's the photograph that shows the scar on the face that shows the similarities in the measurement that shows he had a weapon that matches the description of the weapon used to kill Hightower. So it's all of those facts combined. Again, it goes back to Wesby. I'm trying to get back to Judge Miller's question. It seems to me you were maybe a weapon entitled to show that he's been officers knew he'd been previously arrested. But you put in much more than that. You put in a lot of facts surrounding the previous arrest. Because they went to what the officers knew, what the officers used to base their decision on probable cause. And notably all of this evidence, all of it, the gangs, the ties, the prior allegations, were admitted during the criminal trial that led to the conviction in this case. It was known by the district attorney when they decided to prosecute. It was known by the judge that signed the ramming warrant. So the jury one of the allegations was that the arrest warrant and the prosecution was induced only by fraud or undue influence or by fabricated evidence. So the jury was entitled to see the very same evidence and presentation that was presented to that magistrate or that judge at the trial level that was presented to the district attorney and was presented to the criminal jury. And that's why I'm asking this question and maybe I haven't asked it correctly. I understand what your clients knew. I'm trying to figure out whether or not the record shows that this evidence was the facts of the arrest, was presented to either the prosecuting attorney or the magistrate that issued the initial. Yes it was, your honor. There was a meeting between the detectives Uli and Vanderhorck where they went and spent several hours with the district attorney presented the case, presented what's called a murder book, which had the prior arrest report from the initial incident, the facts of it, the reports, all of that data as well as everything else that leading up to the current prosecution related to the current shooting. So all of that was included in that. Whether or not it establishes probable cause is a separate issue. One of the things, one of the issues at this trial was whether or not the prosecuting attorney and the, had been provided with full information. So you think it went to that issue? Not only did it go to that issue but also as to the judge who signed the Ramey Warrant if you look at the Ramey Warrant which is at supplemental excerpts of Record 143 you'll find that it actually includes references to an attachment. The attachments were not admitted in this trial at that time, in our civil trial. But the Ramey Warrant did include attachments which included that prior arrest warrant, or excuse me, the prior arrest report, the factual situation and circumstances leading up to that arrest. So all of that was then presented to the trial judge who signed the Ramey Warrant. Can you help me with the record in this case? Yes sir. It seems to me, and maybe miscounting, that at some point there were three people who identified the plaintiff in this case as the perpetrator. More or less. More or less. One in a somewhat shaky fashion, one in a more definitive fashion. Was the third one the person who later recanted? I'm trying to figure out where he fits into that category. So the recanting, so there was three people. There was Jenkins, who was the positive identification, who positively identified him, and then recanted. There was two others. And one, you I think quite candidly described in your brief as more shaky than the others. The other two were both not definitive. Okay. One was, and it could be, I can't remember the exact words, one was, I think that's him, but I'm not certain, but it looks like him. Then there was another witness unrelated to this that were unknown to the detectives that came forward ten years later and said, hey, I heard so-and-so else was the shooter. And I was in the area, and I saw, and I think it was this other person. So that's what led to the ultimate overturning. Right, and I'm focusing on, at the time that the plaintiff was charged, there were at least three people who had at least provided incriminating evidence. Two of them were somewhat shaky, and the third one was the guy who later recanted. Was definitive. And rock solid. Right, but who later recanted. Yes. I'm just trying to make sure I have the facts right. So in addition to the physical characteristics matching all the descriptions, and the one positive ID and two tentatives, all the other information was known to the detectives, which is what's being challenged. Moving to the next issue on factual innocence. Before you get to that because you're running low on time, can I just ask you about the jury selection? Yes. And in particular, so I want to be sure I understand the sequence correctly. The jury is impaneled and sworn. And then juror number eight starts crying. And the decision is made to excuse juror number eight. And at that point the rest of the veneer is still there in the courtroom because they haven't gone home yet. So we impanel a jury. We lose jurors. So juror one does the, I can't understand you. And so we go and sidebar in the hallway outside the jury. We have a discussion. We come back in. Then we reopen. Then juror eight is sworn. Juror eight raises her hand. And she's having physical reactions. She's literally shaking, quivering. And there's actually a discussion in the record where I actually cite that for the record and that's at 5ER 887 through 889 I believe, where the judge actually asked plaintiff's counsel, do you agree with the defense characterization? All of this happens in the hallway outside the presence of the jury at sidebar. So the jury cannot physically see what's going on. This happens after the jury was sworn, right? Immediately after the jury was sworn. And the other prospective jurors who were there, why are they still there? Don't they normally leave after the jury is sworn? Literally, we swear the jury and she instantly raises the issue. So the jury's still in the box. We go in the hall. We come back in and just continue with selection. So there's a few minutes while we're in the hallway but there's no recess. We don't break for a day. We don't bring back more jurors. All the jurors that are in the box remain in the box. All the other prospective jurors in the audience remain. So why is it appropriate to allow setting aside the question of whether you should replace juror number 8 once you excuse her and I'm not questioning the decision to excuse her. Why is it appropriate to reopen preemptories when you have a jury that was impaneled, that was sworn and start letting the parties exercise preemptories against unrelated members of the jury that had been sworn? Where is that allowed for in the rules? It's absolutely the discretion of the trial court, first of all. And second of all, there was no new preemptories. And plaintiff waived this argument. Not only did they not object at the time, but they actually exercised preemptories thereafter. So they themselves availed themselves of that and specifically... Let me ask you about that because I'm curious about what the record shows on that. So everybody agrees the juror ought to be excused. There's no... I can't remember. Well, certainly they're not saying on appeal that Judge Eric, by excusing the shaking juror... Oh, there's no argument of that and there's no argument that the jury as impaneled was biased and... I understand that. I'm just trying to figure out the procedural. So the juror gets excused and then the judge says, I think on his own, neither side seems to have suggested it, I'm going to let you go back and exercise preemptories again. He says that and in fact... Does the plaintiff, I think of him as the defendant because he was charged, does the plaintiff in this case say, no, Judge, that's wrong, we shouldn't do that? No, the statement is something along the lines of I'll remain silent or I'll waive comment on it. Let's see if I can find it exactly. I'm just trying to figure out whether that, whether or not this... It may not matter if the ultimate jury didn't have some disqualifying person on it but I'm just trying to figure out whether this issue was preserved for appeal. No, the actual statement was I'm going to pass on it for now and that's at 5 ER 887. It was from Plaintiff's counsel. So, so far as the judge knew there was no objection made to this unusual, I think Judge Miller's probably correct, unusual procedure. Correct. If I could hit one I know my time's up. I'm looking at I'm going to pass, I'm looking at that page and I mean maybe the point is there's no affirmative objection but one could read that as just I'm going to pass on that he's not objecting to the excusal of number 8 not that he's saying he's okay with reopening peremptories but but I guess your point is that there's no affirmative objection to, and he did in fact exercise one. That's correct. Okay, I mean do you maybe it's, maybe it's different because nothing had happened. I mean if this had happened after the first witness had testified do you think it would still be within the discretion of the district court? No, I think at that point it would be inappropriate you would dismiss the witness and you would go with a 7 member jury. At this point we had not even started, the jury had not been instructed, we hadn't even started with opening statements, nothing had happened. There literally was a span of seconds between when this happens and continuing with jury selection. So in the record you see the jury is sworn but in reality it's one continuous progression. Nobody even leaves the courtroom. If I could hit one more point quickly, I know my time is up. Very briefly, yeah. If the court was to overturn the verdict, we would ask the court to look at qualified immunity. The detectives have asked multiple times for qualified immunity. It was in the prior motions for summary judgment but was not addressed simply because both of the two prior trial judges found that the actions of the officers were objectively reasonable and there was a lack of causation to show conviction. Because of that, the officers have been denied the opportunity for qualified immunity. When the second court of appeal decision remanded the matter, it gave very clear instructions to our trial judge that this will be tried on the malicious prosecution claim. Obviously I'm paraphrasing. Because of that, the officers have been denied qualified immunity and as the Supreme Court has said, it's an immunity from suit. So if this was remanded, and I don't believe it should be, we would ask for that. Any questions? No, I think not. Thank you. Thank you so much. May it please the court. First of all, on this issue of the jury issue, at page 46 and 47 of our opening brief, I am quoted as saying, I don't think it's fair to open up the whole case again. I disagree with that because I don't think it's fair to actually allow them to have a peremptory unless there was information that defense counsel that really substantially deviated what he has already done. What he has already been known in the case. And is this because there were two reopenings? Are what you're quoting took place after the second one or the first one? That's I believe the first one. And then on the second one, I was saying in there that about at 5 ER 1040 to 1043, he indicates he's going to reopen again. And I was saying, I was objecting to the person getting dismissed in the first place, the upset juror. But you don't raise that on appeal. Well, we did raise that on appeal. Do you raise that the juror should not have been dismissed? Well, we stated in my objection was she shouldn't have been dismissed. No, no. In your appellate brief, do you make an argument that the juror shouldn't have been dismissed? To be honest with you, my time is so short, I can't recall. But I think more importantly if we go, I think this jury thing was extremely unusual. But I think if you go back really to the prior arrest issue, we're dealing with California law. California law says the prior arrest should not be admitted. Period. There's a case that came out in 2017. We cited it in our brief in our reply brief at page 10. Not only the Riemers case from 1970, California Supreme Court, but the People v. Maxwell case. And even though this is cases in this court and the law in this circuit might be different, this arose in California. It was a California arrest. The case was filed in California. So therefore, the California law is the one that should be followed. So I respectfully have to disagree strongly with counsel's claim that this evidence of all these things about this arrest was relevant and admissible. I don't think that it could possibly be fair. When you hear all this stuff in front of it and a jury hears all this stuff, it's virtually impossible for a jury to set aside all these things and try to focus on the reality. The reality is this. There was one witness, Mr. Jenkins, who provided evidence of probable cause. I ask the court continually to please limit it to only whether Mr. Jenkins provided it or not. The court decided to not do that and allow everything else. Now, if Mr. Jenkins said no probable cause, the officers admitted there would be no probable cause. I don't understand why we're trying all these other issues when that was the only issue in the case that gave them probable cause pursuant to both detectives' admission at trial and in deposition. Now, one more thing. I apologize. This video that supposedly was around, no one ever saw that in this record because it doesn't exist. There's no video showing my client there at this supposed scene never became a part of this record. So to argue that, I don't believe is correct. It's not fair. It's out of the record. Now, Jenkins did say that the two detectives were pointing the finger at my client in that lineup. Now, if you look at the picture that defendants have in their excerpts, my client is the only one in blue. My client is the only one with a scar on his face and my client is the only one in the top middle, which according to our expert is the key position that's generally selected by people. Now, Munoz has a scar on the correct side of the face. His picture is somewhere in this record and he looks exactly like the shooter. No scar on anyone else in that six pack. Now, the expert says, oh, you could easily cure this. This is what he says. Put a tape on everyone's face in that area so they all at least look the same. That makes it fair. That makes a lineup fair because the key in this was whether or not there was a scar on our client's face. So he's in the center box. If I could have just one more minute. The murder book. Nobody knew what was in that murder book because they didn't keep a safe copy of that murder book. So what they say is in it, I disagree with. There was no evidence of what exactly was in the murder book and there was no evidence of exactly what was told to that DA because the two officers said they did not remember what they told that DA at the meeting. That's what the record is continually stating. So what they told the prosecuting, the filing deputy is not in the record. They don't know what they told them. And I think that kind of sums it up. If your honors need anything else, I'm happy to try my best. I know it's a little bit quick here and tight to do it in 20 minutes. I did the best I could. I apologize. Thank you, counsel. We thank both counsel for their arguments and the case is submitted and we are adjourned. All rise. This court for this session stands adjourned.
judges: HURWITZ, MILLER, SUNG